STATE OF MAINE *vs.* EUGENE W. MORANG.

Kennebec.      Opinion, May 2, 1934.

444

*H. C. Marden,* County Attorney, for State.
*Berman and Berman,* for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

STURGIS, J. The respondent appeals from his conviction in the trial court on an indictment brought under the statute which makes it a felony for any person more than eighteen years of age to have carnal knowledge of the body of a female child between the ages of fourteen and sixteen years. The crime is not rape, but a distinct offense defined and made punishable in Revised Statutes, Chap. 129, Sec. 31. It is not a defense that the child consents; nor is it necessary to establish that the intercourse was accomplished by force and without her consent.

The prosecutrix testified that in the late afternoon of Thursday, April 28, 1932, as she was walking home from high school, she was overtaken by the respondent in his automobile and accepted his invitation to ride along with him. She told the jury that, when they were nearly opposite a large billboard standing back from the road and more or less surrounded by trees and bushes, the respondent suddenly drove his car in behind it, stopped the engine, and, having pushed her back into the corner of the seat, held her so she could not resist and forced her to submit to sexual intercourse.

The prosecutrix was fourteen years old. She says this was her first act of intercourse and the step-ins she wore were stained with blood. She further said that she was frightened, but made no outcry and, when the act was consummated, immediately got out of the car and walked home across the fields. She did not report the affair to her grandparents, with whom she lived, until the first of the following June when she told her grandmother what had hap-

pened and learned that she had noticed the stains on her under-garment when it came in for washing, but supposed its condition was due to natural causes. The grandmother confirms this state-ment and fixes the date of the discovery of the stains as the last Saturday of April, which was two days after the time of the alleged offense.

The girl states that within a week and a half after the inter-course she met the respondent in Gardner and told him she knew she was in trouble. She also went to a physician, as she says, in May or June and confirmed her pregnancy. She sought but was denied birth prevention. On January 7, 1933, following, she gave birth to a child.

The State supported its charge against the respondent further with evidence which tends to show that on May 14, 1932, which was soon after the time when the girl claims she saw him at Gardner and told him of her condition, he sold his cow, resigned his position as a deputy sheriff of the county, and fled to Nova Scotia with his wife and adopted son. The respondent admits that he suddenly decided to leave Maine and started his journey the same day. He gave no notice of his proposed resignation to the sheriff, but sent it in through his attorney without disclosing his intended depar-ture or destination. He left a position which paid him more than thirty dollars a week and had no assurance of employment in the Provinces. Some months later, he took up blacksmithing, which was his trade, and remained there for about a year. He himself did not send any letters back into the State, but his wife carried on a correspondence for a few months with their former friends and neighbors by sending her letters to their attorney for re-mailing. It is evident that for a time at least the respondent's whereabouts were unknown, and the inference is warranted that this was intentional. The jury had a right to consider these facts and estimate what weight should be given them as an indication of conscious guilt. *State* v. *Lambert*, 104 Me., 394.

The girl testified she was attacked between five and five thirty in the afternoon, but does not fix the time with exactness. The re-spondent, who was employed at the county jail, offered evidence to show that it was his custom to get through his work at five o'clock in the afternoon, and insists that he came off duty at this time on

the day in question. His wife told the jury that she called her husband on the telephone at the jail and talked with him between five and five thirty that afternoon, but it does not appear that she consulted any timepiece and the Telephone Company has no record of the call, although calls made between the same exchanges on the next day are shown by the defense. The respondent produces no other witness who attempts to confirm his story that he remained at the jail that day after he finished work. Nor is it at all clear that either time or distance prevented him from being at the scene of the alleged attack as stated by the prosecutrix. The jury were justified in rejecting this alibi.

We are not convinced that it is physically impossible for the attack to have been made as described. Stress is laid on the fact that the girl claims she was forced to submit and it is argued that the situation of the parties prevented intercourse unless both were willing. The prosecutrix, although she resisted at first, may have finally become passive. Her claim of resistance may be entirely false. The jury, however, were undoubtedly aware, as all men know, that a young girl, when discovered in her shame, often seeks refuge in a story of unwilling submission to force. They saw her, heard her testify, and believed that the respondent could and did have intercourse with her at the time and place she named. They were not bound to reject her entire testimony because her story of the use of force seems doubtful. *Falsus in uno, falsus in omnibus* is not a binding maxim. When applied to a story of this sort, it may properly be deemed of little weight.

We are of opinion, in view of all the testimony in the case, that the jury were warranted in believing beyond a reasonable doubt, and therefore in finding, that the respondent was guilty of the crime charged against him. No exceptions having been reserved, that is the only question before the court.

*Appeal denied.*
*Motion for a new trial overruled.*
*Judgment for the State.*